[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 8, 2012
JOHN LEY
CLERK

No. 11-13467
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-02493-SCJ

KASIB JARVIS,

Plaintiff-Appellant,

versus

SIEMENS MEDICAL SOLUTIONS USA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 8, 2012)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Kasib Jarvis, an African-American, appeals from the district court's grant of

summary judgment in favor of Siemens Medical Solutions USA, Inc., ("Siemens")

in his lawsuit alleging employment discrimination based on race and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. For the reasons set forth below, we affirm.

## I. Facts

During the relevant time period, Jarvis worked as a "network consultant" for Siemens under the supervision of Roger Robinson and Robinson's superior, Steve Wagman. Jarvis's duties essentially consisted of assisting customers in implementing Siemens's medical equipment. Another network consultant working under Robinson was Andrew Akery, a Caucasian. Both Jarvis and Akery worked from their homes in different parts of the country; Jarvis lived and worked in an Atlanta suburb, while Akery was based near Dallas. When Robinson started supervising Jarvis and Akery near the end of 2007, he placed more emphasis on customer consulting rather than the purely technical aspects of their jobs.

On April 7, 2008, Robinson sent an email to Jarvis, stating that his performance did not meet Robinson's expectations. According to the email, Jarvis's deficiencies included consistently missing deadlines and failing to meet various work-related objectives, such as assisting in the development of new services and communicating with customers. Robinson outlined a 30-day plan for improvement that Jarvis needed to accomplish to avoid being placed on an official

2

performance improvement plan ("PIP").

On June 2, 2008, Robinson sent Jarvis a memorandum, officially placing him on a PIP. Robinson wrote that, while Jarvis improved in some areas, he continued to have problems in others, including the "most critical" aspect of his job—providing network consulting to customers. The PIP listed specific objectives that Jarvis needed to achieve, including the completion of design specifications for the "Customer Satisfaction Survey" and the "Project Tracking Tool" by June 30, 2008. The PIP also scheduled a review of Jarvis's progress in 30 days and stated that a failure to meet the outlined requirements could lead to termination.

Sometime towards the end June 2008, Jarvis complained of racial discrimination to Wagman and Ellen Johnston, a staff employee in the human resources department. Robinson received notice of the complaint in late June.

On July 10, 2008, Robinson sent an email to Jarvis, summarizing their recent meeting regarding Jarvis's 30-day PIP review. According to the email, Jarvis's overall performance improved, but he still failed to complete certain requirements, including the design specifications for the project tracking tool and the customer satisfaction survey. Thus, Robinson extended the PIP for another 30 days and scheduled a progress review for mid-August. On July 14, 2008, Jarvis

provided Robinson with the design specifications for the project tracking tool and the customer satisfaction survey.

The aforementioned design specifications were not assigned to any other employee. In fact, Robinson often assigned Jarvis projects that he did not assign to other network consultants. Robinson testified that he did so because Jarvis volunteered for the tasks, no other resources were available, and Jarvis was the only one with the necessary skills. In his own deposition, Jarvis agreed that Robinson assigned him the extra tasks because he was more able than others. Jarvis also stated that being assigned such tasks may have been a compliment and that Robinson did not make him do too much work.

Between the end of July and early September 2008, Jarvis communicated with Johnston about applying to a position with Siemens Government Services in Virginia. Johnston guided him through the application process and reviewed his resume.

On August 28, 2008, Robinson emailed Jarvis a summary of their conversation regarding the most recent PIP progress review. Robinson wrote that Jarvis's performance "gradually and continually improved" since the original PIP was issued, but again, problems remained. Specifically, Jarvis submitted partial design specifications for the project tracking tool and the customer satisfaction

4

survey, but the specifications did not contain the required information. Robinson stated that the specification for the project tracking tool was no longer needed, but an appropriate specification was still required for the customer survey. Thus, Robinson extended the PIP for another 30 days.

Around this time, Jarvis emailed Robinson, asking to take several certification exams related to Jarvis's job. Robinson forwarded Jarvis's email to Wagman, stating that the exams were "certainly in line" with Jarvis's position and "in accordance with his performance objectives." However, Robinson felt that "Siemens would be paying for [Jarvis] to take his certifications elsewhere" and sought Wagman's advice on how to proceed. Robinson ultimately denied Jarvis's training request and testified at his deposition that he did so due to budgetary concerns.

On the evening of October 2, 2008, a Thursday, Jarvis flew to Virginia to attend a scheduled job interview with Siemens Government. Earlier that day, Robinson called Jarvis for a telephone conference. Robinson inquired about Jarvis's location, and Jarvis replied that he was at his home office. However, Robinson testified that, during the conference call, he could hear traffic noises in the background on Jarvis's end, from which Robinson surmised that Jarvis was not at home. Jarvis testified that he was at home during the call, but acknowledged

5

that the window might have been open or the television might have been turned on, rendering the background noise. Jarvis testified that the call occurred at 4:00 or 4:30 p.m. and that, shortly afterwards, he drove to the airport to catch the flight to Virginia. Jarvis returned to Atlanta on Sunday, October 5th, and took approved vacation leave the following week, starting Monday.

Jarvis was required to inform Robinson about his absence from the office on Friday, October 3rd. Moreover, according to company policy, if an employee was to have an in-person interview with another division of the company, as in Jarvis's case, he had to inform his manager of that interview. Jarvis never disclosed to Robinson that he would be away from his home office the entire day on Friday or that he was attending a job interview with Siemens. The day before, on October 2nd, Jarvis had notified Robinson that he would "step out briefly" on Friday around 1:00 p.m. to attend an appointment, and that otherwise he would be available for work.

Around the time of Jarvis's trip to Virginia and his subsequent vacation, Robinson and Wagman decided to commence Jarvis's termination. As part of Siemens termination procedure, Johnston prepared a "delegation of authority" document with input from Robinson. The document stated that Jarvis had "a history of documented disciplinary issues and failure to meet the expectations of

6

the job as outlined by management" and that his "latest infraction occurred October 2 and 3, 2008 when [he] took unexcused vacation days and submitted them as regular work days" on his timecard. The document listed numerous specific instances (51 total) of Jarvis's poor performance, separated into five categories: failing to timely submit status reports, missing assigned due dates, failing to follow prescribed procedures, exhibiting deficient consulting skills, and failing to pay attention to details. The document was then submitted for review and signature to the general counsel and three members of executive management.

On October 14, 2008, Robinson sent a termination letter to Jarvis. The letter provided essentially three reasons for Jarvis's discharge: (1) unsatisfactory performance, (2) insubordination, and (3) falsification of a timecard. The letter contained only one specific example of poor performance, namely, failing to complete the design specification for the customer satisfaction survey, as required by the PIP. Regarding insubordination, the letter stated that Jarvis did not request permission to take time off on October 2nd and 3rd. Moreover, during the conference call on October 2nd, Jarvis lied to Robinson about being at home because Robinson could hear traffic noises in the background of the call and later discovered that Jarvis was en route to the airport to fly to a job interview. Finally, the letter stated that Jarvis submitted a falsified timecard showing that he had

worked a full eight hours on October 2nd and 3rd. After Jarvis's termination, Siemens hired a Caucasian employee to replace him.

With regard to Akery's performance, the record shows that Akery repeatedly failed to submit weekly status reports on time, occasionally failed to include proper content in those reports, and failed to submit other requested items. In fact, Akery noted some deficiencies in his own performance evaluation, including a failure to timely submit expense reports and timecards, an overdue completion of required courses, an apparent failure to complete "assessments per the new SP process," and a failure to follow "escalation procedures." Akery also testified in his deposition that, on at least one occasion, Robinson expressed concern about his failure to return voicemails in a timely manner and talked to him about being proactive in discussing projects with customers. However, Robinson never placed Akery on a PIP.

After being discharged, Jarvis filed a complaint against Siemens, alleging racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981. The district court granted summary judgment to Siemens on all claims. The court found that Jarvis had established a *prima facie* case of discrimination but that he failed to show pretext in Siemens's legitimate, non-discriminatory reasons for discharging him. The court denied Jarvis's retaliation claim on the ground that he

8

failed to establish a causal connection between his June 2008 complaints and his termination, and also because he failed to establish pretext.

On appeal, Jarvis argues that Siemens's proffered reasons for terminating him were a pretext for discrimination because Siemens could not have believed that he was guilty of the misconduct set out in his termination letter. He also argues that Akery was guilty of similar misconduct but received more favorable treatment, which further undermined Siemens's reasons for the discharge. With regard to retaliation, Jarvis contends that he suffered adverse employment actions when Robinson placed him on the PIP, assigned him extra duties, and denied him job-related training. He further asserts that a causal connection existed between his complaints of discrimination and the adverse actions.

## II. Analysis

We review the granting of summary judgment *de novo*. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). A district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). We draw all factual inferences in a light most favorable to the non-moving party. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Nevertheless, the non-moving party cannot create a genuine issue of material fact

9

through speculation, *id.*, or evidence that is "merely colorable" or "not significantly probative," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## A.  Discrimination

Under the governing framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), if a plaintiff establishes a *prima facie* case of discrimination,[1] "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).  If the employer articulates one or more reasons, "then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Id.* (quotation omitted).

---

[1] To establish a *prima facie* case of employment discrimination, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he was subjected to an adverse employment action, and (4) that his employer treated "similarly situated" employees outside his class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  Where, as here, a plaintiff claims discriminatory discharge, he may also establish the fourth element by showing that he "was replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).  Siemens argues that Jarvis failed to establish the fourth element of the *prima facie* case because he failed to show that Akery was a similarly situated employee.  However, it is undisputed that Jarvis was replaced by a Caucasian worker, which suffices to establish the fourth element. *See Cuddeback*, 381 F.3d 1235.  Accordingly, we conclude that Jarvis has established a *prima facie* case of discrimination.

10

The plaintiff may demonstrate pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quotation omitted). In other words, a plaintiff must produce "sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Evidence of pretext may include the same evidence offered to establish the *prima facie* claim. *Id.*

In this case, Siemens proffered three legitimate, non-discriminatory reasons for terminating Jarvis: (1) poor job performance, (2) insubordination, and (3) the knowing falsification of his timecard. Jarvis challenges the first reason by arguing that no unresolved performance issues remained at the time of his termination, as he had completed the design specification for the customer satisfaction survey by July 14, 2008. Jarvis's argument fails in two respects. First, while Jarvis did submit a design specification for the customer satisfaction survey on July 14th, and Robinson acknowledged as much in the August PIP review, there is no evidence that Jarvis ever completed the *revised* design specification as requested

11

by Robinson. More importantly, a failure to complete the design specification was not the only problem with Jarvis's performance. The delegation-of-authority document listed numerous specific performance deficiencies which Jarvis failed to rebut. For example, Jarvis exhibited problems with his consulting skills as late as September 22, 2008, almost a month after his latest PIP review at the end of August. Thus, Jarvis failed to show that poor performance was not a real reason for his termination.

Jarvis also failed to rebut Siemens's second reason for discharging him, that is, insubordination. The termination letter listed two instances of insubordination: lying to Robinson about being in the office on October 2nd and failing to inform Robinson of his absence on October 2nd and 3rd. Jarvis testified at his deposition that he was, in fact, at his home office during the October 2nd conference call. However, to show pretext, it is not enough for Jarvis to show that he was actually at home, as long as Robinson subjectively believed that Jarvis was lying about being at home. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."). Robinson believed that Jarvis was lying in part because traffic noises were audible in the background of the call. At his own deposition, Jarvis acknowledged that Robinson could have heard the television or

outside noise. Thus, Jarvis failed to show that Robinson did not actually believe that Jarvis was lying to him. *See Holifield*, 115 F.3d at 1565. Furthermore, regarding unauthorized absences, even if Jarvis left for the job interview after working hours on October 2nd, he testified that he failed to inform Robinson of his absence from the home office on October 3rd, despite being required to do so. In his email to Robinson on October 2nd, Jarvis only stated that he would "step out briefly" for a 1:00 p.m. appointment, not that he would be absent for the entire day. Thus, Jarvis has failed to show that Siemens's second reason for terminating him was false.

Because Jarvis failed to rebut two of the reasons that Siemens proffered for his termination, we need not decide whether a genuine issue of fact exists regarding the third reason—timecard falsification. A showing that Siemens fabricated this reason for firing Jarvis would not overcome summary judgment. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.").

Nevertheless, even where a plaintiff fails to rebut all of the employer's proffered reasons for taking the adverse action, he may still establish pretext by

showing that a similarly situated coworker was treated more favorably. *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1279-80 (11th Cir. 2008); *Rojas v. Florida*, 285 F.3d 1339, 1343-44 (11th Cir. 2002). To establish that a comparator was similarly situated, the plaintiff must show that "the quantity and quality" of the comparator's misconduct was "nearly identical" to his own. *Rioux*, 520 F.3d at 1280.

In this case, Jarvis's alleged comparator was Akery.[2] The record shows that Akery exhibited some of the same problems as Jarvis, such as failing to timely submit weekly status reports and failing to complete assigned work projects. However, the record also shows several significant deficiencies in Jarvis's performance that are not seen with respect to Akery. First, as mentioned above, Jarvis exhibited problems with consulting skills, and network consulting was the "most critical" aspect of Jarvis's job. Second, unlike Akery, Jarvis was placed on a formal PIP but repeatedly failed to comply with all of the PIP requirements. Finally, as discussed above, Jarvis failed to inform Robinson that he would be taking time off on October 3, 2008, and Robinson perceived that Jarvis lied to him

---

[2] In a footnote of his brief, Jarvis states that he was similarly situated to two other employees besides Akery for purposes of timecard and attendance procedures. However, he makes no further arguments in this regard and, thus, has abandoned the issue. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 972 (11th Cir. 2008) ("[A]n argument not included in the appellant's opening brief is deemed abandoned.").

about being in the office on October 2nd.  Thus, we cannot say that Akery's misconduct was "nearly identical" to Jarvis's.  *See Rioux*, 520 F.3d at 1280 ("The standard for similar conduct is a fairly rigorous one.").

In sum, Jarvis has failed to show that a reasonable factfinder could find all of Siemens's legitimate, non-discriminatory reasons for his termination to be "unworthy of credence."  *See Springer*, 509 F.3d at 1348-49.  Moreover, Jarvis has not shown that Akery was guilty of nearly identical misconduct but was disciplined differently.  *See Rioux*, 520 F.3d at 1280.  Thus, Jarvis failed to establish that Siemens's reasons for discharging him were a pretext for discrimination.  Accordingly, we affirm the district court's grant of summary judgment to Siemens on Jarvis's discrimination claim.[3]

## B.  Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff may show that (1) he engaged in statutorily protected activity, (2) he suffered a "materially adverse action," and (3) there was a causal link between the two events.  *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

---

[3] We acknowledge that satisfying the elements of the *McDonnell Douglas* framework is not "the *sine qua non* for a plaintiff to survive a summary judgment motion."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Id.*  However, in this case, Jarvis presented no such evidence of discriminatory intent.

15

A "materially adverse action" in the context of a retaliation claim means that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 245 (2006)). As with claims of discrimination, we apply the *McDonnell Douglas* burden-shifting analysis to retaliation claims. *Brown*, 597 F.3d at 1181-82.

Jarvis argues that his placement on the PIP, being assigned extra duties, and denial of training constituted adverse actions. We disagree. With respect to being placed on the PIP, Jarvis asserts that it hampered his ability to apply for jobs within the company. However, Siemens's policy allowed, but did not require, the PIP to affect an employee's eligibility for a transfer, and nothing in the language of Jarvis's PIP limited his employment opportunities within Siemens. In fact, while on the PIP, Jarvis sought and received assistance from the human resources department in applying for another Siemens position. As to extra duties, Jarvis testified at his deposition that Robinson did not make him do too much work, that being assigned extra tasks may have been a compliment, and that Robinson asked him to perform those tasks because Jarvis was more competent than others. Finally, regarding the denial of training, nothing in the record shows how this

16

action adversely affected Jarvis. Robinson's statement in an email to Wagman that the training would be useful to Jarvis does not, by itself, establish that the denial of such training "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Crawford*, 529 F.3d at 974. Accordingly, only Jarvis's termination qualified as an adverse action.

In this light, we need not decide whether any causal connection existed between Jarvis's June 2008 complaints and his termination in October 2008. Even if Jarvis had established a *prima facie* case of retaliation, he failed to show that Siemens's proffered legitimate reasons for discharging him were pretextual, as discussed above. *See Butler*, 536 F.3d at 1212-13; *Brown*, 597 F.3d at 1181-82. Accordingly, we affirm the district court's grant of summary judgment on Jarvis's retaliation claim.[4]

**AFFIRMED.**

---

[4] We affirm Jarvis's 42 U.S.C. § 1981 claims for the same reasons as his Title VII claims. *See Brown*, 597 F.3d at 1174 n.6 (stating that the analysis of an employment discrimination claim under § 1981 "mirrors that under Title VII").