[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11068
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-01887-WSD

KIESHA CHEATHAM,

Plaintiff - Appellant,

versus

DEKALB COUNTY, GEORGIA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 20, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff sued Defendant, alleging sex discrimination under Title VII, 42 U.S.C. § 2000e, and the Equal Protection Clause of the 14th Amendment, as well as retaliation for engaging in protected conduct under Title VII.  Defendant moved for summary judgment on all claims, which the district court granted.  Plaintiff now appeals.  We agree with the district court's well-reasoned order, and affirm.

## I.   BACKGROUND

Plaintiff, Kiesha Cheatham, a female, was hired by Defendant, DeKalb County, as a DeKalb County Fire Rescue ("DCFR") Fire Medic in 2008.  On October 16, 2012, Plaintiff was eating dinner at DCFR Fire Station 1 with Christopher Roberts, her co-worker, when she noticed Roberts experiencing an allergic reaction to onions in their dinner.  Captain Matthew Robinson, Fire Apparatus Operator Bradley Catroneo, and Captain James Damico were also present during the incident.  Captain Robinson and EMT Michael Gales—who entered the room while Roberts was having the allergic incident—administered epinephrine to Robinson to counteract the allergic reaction.

Following the incident, DCFR's Internal Affairs Unit and the DeKalb County District Attorney's Office began an investigation to determine whether someone willfully placed onions in Roberts' meal knowing that he was allergic to onions, and whether proper protocols were followed concerning the administration of the epinephrine.  As part of this investigation, Plaintiff provided written

2

statements about the incident to the DCFR's Internal Affairs Unit on October 25, 2012, and November 30, 2012.  The investigation concluded that Captain Damico had willfully placed onions in Roberts' dinner and that various other employees had violated DCFR protocols following the incident.  As to Plaintiff, the investigation concluded that Captain Robinson had instructed Plaintiff to label the epinephrine as damaged (rather than that it had been used on Roberts) and that plaintiff had originally done so.  However, Plaintiff later corrected this misrepresentation and created a patient care report that documented the epinephrine as having been used on Roberts.

On October 28, 2012, Plaintiff was transferred from Fire Station 1 to Fire Station 17.  Plaintiff contends that this transfer and two subsequent disciplinary letters were done in retaliation for her cooperation with the internal affairs investigation.  The first disciplinary letter on December 10, 2012, constituted written counseling for excessive absenteeism and abuse of sick leave.  The second letter on January 20, 2013, offered written counseling for neglect of duty stemming from a violation of DKFR's chain of command policy.

Plaintiff also contends that she experienced sex-based harassment and discrimination after being transferred to Fire Station 17.  On more than one occasion, two male firefighters defecated in the women's restroom and did not flush the toilet.  Further, Station 17's Captain Mitchel commented "the only reason

3

why a woman is in the fire service is to cook and do clerical work" and stated that he "didn't want a woman riding on his [fire truck]." Plaintiff was also denied requests for leave because other male medics had already requested the time off, although she concedes that, at other times, her requests were granted.

Plaintiff testified that she filed several grievances "[d]uring the time frame of after the onion incident," though she did not remember exactly how many or when these were filed. For one such grievance, Plaintiff contends that on February 1, 2013, she met with Department Chief Edward O'Brien, who stated, "I'm going to give the grievance back to you and let you decide on what to do about it because if I go deeper into it, [you] could be suspended for 30 days or worse. I'll let you decide. I took it easy on you because you have not been in any trouble before."

On February 21, 2013, Plaintiff filed a formal complaint of discrimination with DeKalb County. According to Plaintiff, the county never responded to this complaint. On March 14, 2013, Plaintiff filed a charge of discrimination with the EEOC.

Finally, on August 21, 2013, Plaintiff resigned from her position with DCFR and accepted another full-time salaried position with a private ambulance company.

On June 17, 2014, Plaintiff sued Defendant asserting retaliation, sex discrimination, and hostile work environment claims under Title VII of the Civil

4

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Equal Protection Clause of the Fourteenth Amendment, via 42 U.S.C. § 1983.  Defendant moved for summary judgment and the magistrate judge issued a report and recommendation ("R&R") recommending that the district court grant the motion.  After considering objections to the magistrate judge's R&R, the district court adopted the magistrate judge's R&R and granted Defendant's motion for summary judgment.  Plaintiff appeals that order and the district court's entry of final judgment.

## II.     NORTHERN DISTRICT OF GEORGIA LOCAL RULE 56.1

Plaintiff first contends that the district court erred in its application of Local Rule 56.1, NDGa, by rejecting unsupported assertions made in Plaintiff's undisputed statement of material facts.  We review a district court's application of its local rules for an abuse of discretion, finding such abuse only when the plaintiff demonstrates that the district court made a clear error of judgment.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009); *see also Clark v. Housing Auth. of City of Alma*, 971 F.2d 723, 727 (11th Cir. 1992) (noting that district courts receive "great deference" in interpreting their local rules).

Local Rule 56.1 establishes the process through which summary judgment motions will be litigated in the Northern District of Georgia.  Under Local Rule 56.1(B)(2)(b), a respondent may submit a statement of additional facts which the

respondent contends are material and present a genuine issue for trial.  Local Rule

56.1, NDGa.  However, the court "will not consider" any such fact if it is:

> (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

Local Rule 56.1, NDGa.  "[F]ailure to comply with local rule 56.1 is not a mere

technicality"; instead, the rule provides "the only permissible way for [the non-

movant] to establish a genuine issue of material fact."  *Mann*, 588 F.3d at 1303;

*see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (holding that a

district court should "disregard or ignore evidence relied on by the respondent"

when not properly cited in response to a movant's statement of undisputed facts).[1]

Applying this rule, the magistrate judge concluded that Plaintiff often failed

to support her responsive statements of material fact with adequate record

citations, and that the R&R would not consider any such unsupported assertions or

denials.  The district court concurred in this assessment and adopted the facts as set

out in the magistrate's R&R.

---

[1] In *Reese* the court considered a situation where the non-movant failed to cite factual support pursuant to Local Rule 56.1 "in his response to the statement of undisputed facts submitted by [the movants]."  *Id.* at 1267.  Here, Plaintiff (the non-movant) admitted most of the Defendant's statements of material fact.  Yet, she failed to cite factual support for her *own* statement of undisputed material facts.  The Local Rules provide clear guidance as to what a court must do in such a situation—"the court will not consider any fact" that is not properly supported as specified in the rules.  Local Rule 56.1(B)(1), (B)(2)(b), NDGa.

We also agree that the magistrate judge properly applied Local Rule 56.1 in choosing "not to consider any fact" identified in Plaintiff's statement of undisputed material facts that was not properly supported with adequate record citations. First, four of Plaintiff's fifteen facts were supported only by citation to Plaintiff's complaint—in violation of Local Rule 56.1(B)(1)(b).  Other stated facts either were not actually supported by their corresponding record citations or were stated as an issue or legal conclusion, which violates Local Rule 56.1(B)(1)(b) & (c).[2]  As such, we conclude that the district court did not abuse its discretion by applying Local Rule 56.1 and adopting the factual recitation of the magistrate judge.  The next issue is whether, under these facts, the district court properly granted summary judgment to Defendant.

## III.    SUMMARY JUDGMENT

We review a district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  A movant is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute about a

---

[2] Examples include: Plaintiff's assertion that she was transferred to another station "because of" her participation in the onion-investigation, Plaintiff's assertion that individuals at her station had a meeting with the Assistant Chief from which she was excluded, Plaintiff's assertion that DeKalb County Policy allows an individual to speak to anyone in their chain of command regarding discrimination, and Plaintiff's assertion that she was "forced to resign her position because of the toll the hostile environment had on her health."

7

material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## A.    Retaliation

Plaintiff claims that she was subjected to unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a).[3]  Since Plaintiff offers only circumstantial evidence that Defendant retaliated against her, Plaintiff must first "establish a *prima facie* case by demonstrating the following essential elements:  (1) the employee was engaged in statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016).  The magistrate judge and district court concluded that Plaintiff failed to meet this initial burden; we agree.

To meet the first *prima facie* element—that Plaintiff engaged in protected activity—Plaintiff must establish that she either "has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause).  42 U.S.C.

---

[3] This provision provides:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

§ 2000e–3(a); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  Plaintiff asserts two allegedly protected acts:  (1) her participation in the internal investigations of the DeKalb County Fire & Rescue Department Internal Affairs Unit and the District Attorney's Office and (2) her later filing of a complaint of discrimination with DeKalb County and an EEOC charge of discrimination.

As to the first act—participating in the internal investigations—this participation does not constitute protected activity under either the participation clause or the opposition clause.  The "participation clause" only "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *Total Sys. Servs.*, 221 F.3d at 1174.

Further, Plaintiff's participation in the investigation is not protected under the "opposition clause" because it was not an act of opposition to a "practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e–3(a).  "[A]lthough we acknowledge that a plaintiff conceivably could prevail on [her] retaliation claim notwithstanding the fact that the practice [she] opposed was not unlawful under Title VII," Plaintiff's subjective belief that her employer was engaged in unlawful employment practices must be "*objectively* reasonable."

9

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis in original).  Such a belief was not objectively reasonable here. The internal investigations did not deal with conduct "made unlawful" by Title VII—that is, discrimination based on "race, color, religion, sex, or national origin". *See* 42 U.S.C. § 2000e–3(a)–(b).  Instead, the investigation dealt with whether one of Plaintiff's co-workers had placed onions into Roberts' meal knowing that he was allergic to onions, and whether the proper DCFR protocols were followed concerning the administration and documentation of the epinephrine.  Plaintiff could not reasonably believe that her participation in the internal investigation was in opposition to some practice made unlawful by Title VII.  *See Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).  As such, plaintiff cannot rely on her participation in the internal investigations to prove her *prima facie* case.

Plaintiff can, however, rely on her DeKalb County complaint of discrimination[4] and her EEOC charge of discrimination—both of which are statutorily-protected activities.  Nonetheless, Plaintiff cannot establish the third element of the *prima facie* case for this protected activity—that "a causal link exists between the protected activity and the adverse employment action."

---

[4]  Plaintiff did not recall the specific details of the DeKalb County complaint of discrimination referenced in her complaint, but we will assume that this complaint of discrimination—like the EEOC charge—alleged some form of sex discrimination and is thus protected by the opposition clause.

*Furcron*, 843 F.3d at 1310.  To establish such a causal link, the employee must prove that "the desire to retaliate was the but-for cause of the challenged employment action."  *Booth v. Pasco Cty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (internal quotation marks omitted).  Plaintiff contends that a causal relationship is established here because the alleged retaliatory actions all "came after the [Plaintiff] participated in the investigation regarding her coworker" and that "immediately thereafter she was ostracized, written up repeatedly and treated like an outcast."[5]  But again, Plaintiff's participation in the internal investigation does not constitute statutorily-protected activity; only Plaintiff's DeKalb County complaint of discrimination and EEOC charge qualify.

Thus, to be actionable, any retaliatory actions must have occurred after these formal complaints were filed.  *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1245 (11th Cir. 2016) (concluding that "no triable issue of causation exists" in retaliation claim when school district raised ethics concerns prior to administrator's protected activity, even though formal ethics complaint was filed afterwards).  Plaintiff's EEOC charge was filed on March 14, 2013 and her DeKalb County complaint was filed shortly before, on February 21, 2013.  The alleged adverse employment actions, however, all occurred before these statutorily-protected

---

[5] We assume without deciding that these actions—individually or collectively—constitute an adverse employment action for purposes of Plaintiff's retaliation claim.  *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (recognizing that a set of actions may constitute an adverse employment action when considered collectively, even though some actions do not rise to the level of an adverse employment action individually).

11

activities were undertaken.  Specifically, Plaintiff's transfer occurred on October 28, 2012; Plaintiff was allegedly excluded from a meeting with the assistant chief about the onion incident on November 21, 2012; Plaintiff's written counseling for excessive absenteeism was received on December 10, 2012; and Plaintiff's written counseling for violation of the chain of command was received on January 20, 2013.  And, to the extent Plaintiff hopes to rely on general ill-treatment by her co-workers or supervisors, Plaintiff has not cited any evidence that such ill-treatment occurred because she filed the DeKalb County complaint or the EEOC charge. Plaintiff has not cited to this court any specific adverse employment action that occurred after the filing of her complaints, nor any other reason to believe that her complaints were the "but-for cause" of any alleged mistreatment.[6]  *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016).  Plaintiff has therefore failed to establish a *prima facie* case of retaliation, and the district court was correct to conclude that Defendant is entitled to summary judgment on this claim.

---

[6] The district court analyzed whether Plaintiff's resignation or denial of back pay were adverse employment actions that had been caused by the filing of Plaintiff's complaints.  However, Plaintiff does not mention either of these potential adverse employment actions in her retaliation briefing to this court.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (issues or arguments not raised in a party's briefs are abandoned).  At any rate, as explained below, we agree with the district court that Plaintiff failed to present evidence sufficient to meet the high standard for a constructive discharge claim.

12

### B.    Hostile Work Environment

"To establish a hostile work environment claim under Title VII, the plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotations omitted). Specifically, to prove a *prima facie* case, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive so as to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

The requirement that the harassment be "severe or pervasive" contains an objective and subjective element. The behavior must result in an environment "that a reasonable person would find hostile or abusive," and one which the victim "subjectively perceive[s] . . . to be abusive." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (quoting *Harris*, 510 U.S. at 21–22). In evaluating the severity of the harassment, we consider the totality of the

13

circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance. *Id.* Instances of alleged harassment are considered cumulatively, rather than in isolation. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).

In support of her hostile work environment claim, Plaintiff alleges the following: fellow male officers on occasion defecated in the women's restroom and failed to flush the toilet, so that the feces were later found by Plaintiff; Captain Mitchel commented that "the only reason why a woman is in the fire service is to cook and do clerical work" and stated that he "didn't want a woman riding on his [fire truck]"; Plaintiff was denied requests for leave because other male medics had already requested the time off (although sometimes her leave requests were granted); Plaintiff filed several formal complaints and grievances which were never addressed by the County; and Plaintiff was told by Chief O'Brien that she had the option to revoke one of her complaints and that if she did not, she might be suspended for 30 days.

Other than Captain Mitchel's comments, there is no evidence that any of these behaviors were "*based on*" Plaintiff's female status. *Trask*, 822 F.3d at 1196 ("[T]he plaintiffs must show the hostile treatment was *based on* their protected

14

status.").  Indeed, Plaintiff herself believed that much of the hostility she faced was because she had cooperated with the investigation of the onion incident and created a patient-care report for the medication that was used on Roberts, which report contradicted a supervisor's explanation.  Hostile treatment based on Plaintiff's cooperation in the investigation does not provide evidence that these incidents were motivated by Plaintiff's sex.

Further, even if Plaintiff had presented evidence that this allegedly negative treatment was motivated by her sex, the treatment was not sufficiently "severe or pervasive" to support a hostile work environment claim.  *Compare Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (holding that conduct *was not* sufficiently severe or pervasive where an African-American plaintiff "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis," "heard people say the slur 'nigger,' but only a 'few times,'" and heard about a noose being left in the breakroom, though he did not see it himself) *and Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 578–79 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding that conduct *was not* sufficiently severe or pervasive where a supervisor allegedly touched plaintiff's hand and thigh, lifted her dress hem, repeatedly asked her to lunch, told her that she was beautiful, stared at her, and called her home on numerous occasions at

15

night and asked about personal matters) *with Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding that conduct *was* sufficiently severe or pervasive where the female plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her") *and Miller*, 277 F.3d at 1276–77 (severe and pervasive conditions existed where co-workers called plaintiff racially offensive names three to four times per day).

Plaintiff did not testify how often her co-workers left feces in the female restroom toilets, and could only say that Captain Mitchell made the derogatory statements "numerous" times.  Such evidence does not establish a pattern of frequent occurrences, or a workplace "permeated with discriminatory intimidation, ridicule, and insult" that effectively "alter[s] the conditions of the victim's employment." *Gowski*, 682 F.3d at 1311.  Further, though the actions of her co-workers might have been offensive and reprehensible, they were not "physically threatening or humiliating." *Reeves*, 594 F.3d at 808.  And finally, though Plaintiff may have felt that her Captain did not want her at the office, Plaintiff has not pointed to any specific manner in which "the conduct unreasonably interfere[d] with the employee's job performance." *Miller*, 277 F.3d at 1276.  Thus, taken

16

together in its totality, Plaintiff has not presented sufficient evidence that the allegedly hostile actions were sufficiently severe or pervasive to support Plaintiff's hostile work environment claim.

### C.    Disparate Treatment Discrimination

Plaintiff's final set of claims are for disparate treatment discrimination under Title VII and 42 U.S.C. § 1983.  When § 1983 is used as a parallel remedy for violation of Title VII, courts employ the same elements and standards of proof to analyze both claims.  *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995).  To establish a *prima facie* case for disparate treatment under this framework, Plaintiff may show that (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly-situated, non-protected employees more favorably; and (4) she was qualified to do the job.  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  Plaintiff has failed to make a *prima facie* case of disparate treatment, and thus the district court was correct to grant summary judgment on these grounds.

First, Plaintiff must identify an adverse employment action that would fulfil the second element of the *prima facie* case, and she has failed to do so.  Not all employer actions that negatively impact an employee qualify as "adverse employment actions."  Instead, "only those employment actions that result in a

17

*serious and material* change in the terms, conditions, or privileges of employment will suffice." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (internal quotations marks omitted, emphasis in original). Plaintiff's transfer from Station 1 to Station 17 does not qualify because it did not involve "a reduction in pay, prestige or responsibility" and Plaintiff provides no other reason why "a reasonable person in [Plaintiff's] position" would view the action as adverse. *See Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) (internal quotation marks omitted); *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Nor would either of the written counseling documents issued to Plaintiff. Plaintiff received a written counseling for excessive absenteeism and abuse of sick leave on December 18, 2012, and another for violating the chain of command policy on January 20, 2013.[7] Written criticisms of an employee's job performance that do not lead to tangible job consequences, however, are generally not sufficient to constitute an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001). Plaintiff does not identify any "*serious and material* change in the terms, conditions, or

---

[7] Plaintiff testified that—as was stated in her Complaint—she received another written counseling for excessive absenteeism on November 12, 2012. There is no record of this counseling, and the December 18, 2012 counseling indicates that it was the first offense for this violation. At any rate, the existence of any additional written counseling would not change the conclusion that these counseling letters do not constitute an adverse employment action.

privileges of employment" deriving from the written counseling, and thus it does not constitute an adverse employment action.[8]  *Id.* at 1239.

Second, even if Plaintiff had presented sufficient evidence of an adverse employment action, she has not introduced sufficient evidence of the third *prima facie* element—that her employer has treated similarly-situated, non-protected employees more favorably.  To fulfill this element, Plaintiff may identify a comparator that is "nearly identical" to the Plaintiff and "similarly situated in all relevant respects."  *Trask*, 822 F.3d at 1192.  Plaintiff, however, has not identified a single similarly-situated male employee.  Instead, she merely proffers that she was the only female officer at Station 17.  Such broad contradistinctions are not enough to establish that there were "nearly identical" comparators who were treated more favorably, and is not enough to otherwise establish an inference of discrimination.  Specific comparators are required to keep "courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Burke–Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (internal quotation marks omitted).  Accordingly, Plaintiff has failed to establish a *prima facie* case of Title VII disparate treatment discrimination.  *See McCann*, 526 F.3d

---

[8]  Of note, a constructive discharge does constitute an adverse employment action.  *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1300–01 (11th Cir. 2005).  However, a claim of constructive discharge requires conduct that is of greater severity or pervasiveness than that of a hostile work environment.  *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009).  Because Plaintiff has not presented sufficient evidence of a hostile work environment, she necessarily has failed to establish sufficient evidence that the conduct underlying this claim served to "constructively discharge" her.

19

at 1375 (dismissing plaintiff's discrimination claims for failing to establish a sufficient comparator).

## IV.   CONCLUSION

Plaintiff has not presented a genuine issue of material fact warranting a trial on any of her claims.  Therefore, we **AFFIRM** the district court's summary judgment order and final judgement.