*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELLEN WHITE,

      Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

      Defendant-Appellee.

FOR PUBLICATION
October 1, 2020

No. 349407
Wayne Circuit Court
LC No. 17-017679

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

RIORDAN, P.J. (*concurring in part and dissenting in part*)

I agree with trial court's conclusion that plaintiff failed to establish a discrimination claim. However, I disagree with the majority that plaintiff's performance evaluation, performance improvement plan ("PIP"), formal counseling, and reduced travel requirements were adverse employment actions and, as a result, they support plaintiff's retaliation claim. In reaching this conclusion, it is not necessary to consider whether the majority's adoption of the standard set forth in *Burlington N & Santa Fe Ry Co v White*, 548 US 53, 71; 126 S Ct 2405; 165 L Ed 2d 345 (2006), is proper because plaintiff provides no objective basis for demonstrating that the alleged retaliatory actions were materially adverse under either our existing precedent or under the majority's newly adopted rule. See *Wilcoxon v Minnesota Min & Mfg Co*, 235 Mich App 347, 363; 597 NW2d 250 (1999) (there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling); *Pena v Ingham Co Rd Com'n*, 255 Mich App 299, 311; 660 NW2d 351 (2003) (applying *Wilcoxon* to a retaliation claim and citing various federal circuit court cases for the proposition that "[a]lthough there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as 'a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation' "); *Burlington*, 548 US at 71 (considering whether a reasonable employee would find the challenged action materially adverse, meaning that it would dissuade a reasonable worker from making or supporting a claim of discrimination).

Plaintiff fails to submit any evidence to support her general allegation that she was

prevented from obtaining potential promotions. She does not allege, nor offer any version of facts to support, that she was denied raises or promotions because of her race and age. Rather, until plaintiff voluntarily went on medical leave, she maintained the same position and salary, she was not disciplined under the Civil Service Rules, and she remained eligible for promotion. While the majority offers its own conjecture, plaintiff has not submitted any evidence to support a conclusion that a reasonable employee in the same circumstances would be dissuaded from making a discrimination claim.

The majority reasons that plaintiff suffered an adverse employment action because a needs-improvement rating and a PIP plan carry potential consequences. However, I would hold, consistent with federal caselaw, that plaintiff failed to meet her burden of demonstrating that she suffered an adverse employment action because negative performance evaluations and PIP plans alone are not sufficient evidence.

Federal courts applying *Burlington* require allegations and evidence that PIPs and negative performance evaluations have materially adverse consequences in order to qualify as an adverse employment action. See, e.g., *Halfacre v Home Depot, USA, Inc*, 221 Fed Appx 424, 433 (CA 6, 2007) (lower performance-evaluation scores that significantly that do not actually impact an employee's wages or professional advancement are not materially adverse); *Cole v Illinois*, 562 F3d 812, 816 (CA 7, 2009) (the adoption of the improvement plan did not constitute an adverse action that would cause a reasonable employee to forego exercising her rights under the Family Medical Leave Act, or result is a reduction in responsibility, pay, hours, or any other benefit, and it did not impose a material change in employment duties); *Thibodeaux-Woody v Houston Cmty Coll*, 593 Fed Appx 280, 286 (CA 5, 2014) (stating that a less than optimal performance review, without more, is not something that would have discouraged an employee from asserting a charge of discrimination); *Payan v United Parcel Serv*, 905 F3d 1162, 1174 (CA 10, 2018) (placement on an employee improvement plan alone does not qualify as a materially adverse action as defined by *Burlington Northern*); *Sykes v Pennsylvania State Police*, 311 Fed Appx 526, 529 n 2 (CA 3, 2008) (noting that negative performance evaluations are not by themselves actionable under Title VII absent a showing that they resulted in a more tangible form of adverse action, such as ineligibility for promotional opportunities); *Crawford v Carroll*, 529 F3d 961, 974 (CA 11, 2008) (finding that an unfavorable performance evaluation constituted an adverse employment action where it actually rendered the plaintiff ineligible for a merit pay increase); *Weber v Battista*, 494 F3d 179, 185; 377 US App DC 347 (2007) (holding that two performance evaluations "qualif[ied] as adverse actions" under *Burlington* "insofar as they resulted in . . . losing a financial award or an award of leave"); *AuBuchon v Geithner*, 743 F3d 638, 644 (CA 8, 2014) (explaining that since *Burlington*, to avoid the "triviality pitfall" a materially adverse employment action must produce some injury or harm, and commencing performance evaluations, falsely reporting poor performance, sending critical letters threatening discipline, among other acts, as a matter of law do not establish a prima facie case of retaliation absent materially adverse consequences to the employee); *Fields v Bd of Ed of City of Chicago*, 928 F3d 622, 626 (CA 7, 2019) (stating that "performance improvement plans, even though they had the potential to lead to termination or other discipline, are not enough" to establish an adverse employment action). See also *Meagher v Wayne State Univ*, 222 Mich App 700, 710; 565 NW2d 410 (1997) (while federal decisions in civil rights cases are often used for guidance they are not binding on this Court). This is not to say that a PIP or negative performance evaluations may *never* be the basis for a retaliation claim, but that there must be some evidence of tangible job consequences. *Baloch v Kempthorne*, 550 F3d

1191, 1199; 384 US App DC 85, 93 (2008) ("performance reviews typically constitute adverse actions only when attached to financial harms").

The majority takes great pains to distinguish the case before us from the overwhelming weight of federal cases and points out that many of the cases cited *supra* merely apply the law to the facts and rely on cases pre-dating *Burlington*. Rather than assume that the federal courts were unaware of the dates of the authorities they cite, or that they were all simply mistaken by citing cases decided before *Burlington*, it is more reasonable to conclude that the federal courts intentionally carried over the pre-*Burlington* legal standard for relying on PIPs and performance evaluations as the basis for retaliation claims into post-*Burlington* jurisprudence. Additionally, many of the cited cases clearly and concisely state the law under *Burlington* and additional exegesis was not required. The majority does not explain what further wisdom the federal courts must express when applying well-established law to the uncomplicated facts of those cases.

Additionally, the majority attempts to factually distinguish this case from the cited cases by characterizing the PIP at issue as more onerous than those in the cited cases. Plaintiff was required to take classes, cross-train in other areas, and meet weekly with her supervisor. These requirements are similar to those in federal cases where work-related objectives were identified, timelines established, and follow-up meetings were scheduled. See *Jarvis v Siemens Med Sols USA, Inc*, 460 Fed Appx 851, 853 (CA 11, 2012) (PIP identified objectives the plaintiff needed to achieve within 30 days and scheduled review meetings); *Langenbach v Wal-Mart Stores, Inc*, 761 F3d 792, 798 (CA 7, 2014) (PIP identified actions the plaintiff could take to improve her performance, measurement standards by which her performance would be evaluated, and a time frame in which she was expected to improve). Moreover, the majority offers no discernable test or guidance for measuring when a PIP is burdensome enough to dissuade a reasonable employee from making a discrimination claim. In this case, plaintiff was required to attend weekly meetings, but would monthly meetings have been requisitely oppressive? I agree with the majority's assertion that generally the possibility of discipline can be stressful. See *Poullard v McDonald*, 829 F3d 844, 856 (CA 7, 2016) ("the possibility of discipline can be stressful"). However, the mere possibility or threat of discipline is insufficient to support a claim for retaliation, and excessive scrutiny, or "closer supervision," is not an actionable adverse employment action. *Id.* at 856-857; *Thomson v Odyssey House*, 652 Fed Appx 44, 46 (CA 2, 2016). Accordingly, rather than applying the majority's newly adopted *Burlington* test in a novel manner, I would apply it in a manner consistent with the overwhelming body of federal cases which require evidence of tangible job consequences. In this case, plaintiff has not pleaded or submitted evidence of such consequences.

The majority concludes that plaintiff suffered negative consequences from the needs-improvement rating and PIP plan because she was issued a Notice of Formal Counseling. However, neither plaintiff nor the majority explain how the notice was materially adverse to plaintiff. There are no allegations or evidence in the record that the notice had any impact on plaintiff's salary or benefits,[1] or that the notice would induce a reasonable employee to forgo

---

[1] *Wilcoxon*, 235 Mich App at 363 (a materially adverse action is one such as termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

making or supporting a discrimination claim.[2]

The majority further concludes that plaintiff established a genuine issue of material fact regarding whether the change in work location constitutes an adverse employment action. However, plaintiff's reduced travel schedule is not objectively adverse, *Wilcoxon*, 235 Mich App at 364; *Burlington*, 548 at 68, particularly when she was instructed to continue to commute from her home office in Lansing to the Detroit worksite when the need arose. Plaintiff's concession that she did not again travel to Detroit after she began reporting to the Lansing office may be evidence that such a need did not arise thereafter, but it is not evidence of retaliatory motive. Nor is there any evidence to support the conclusion that the reduced travel time would dissuade a reasonable employee from making a discrimination claim.[3]

I agree with the majority's disposition on all other issues. Accordingly, I would affirm the trial court in all respects.

/s/ Michael J. Riordan

---

material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation). See also *Welsh v Fort Bend Indep Sch Dist*, 941 F3d 818, 827 (CA 5, 2019) (stating that under the *Burlington* standard, "when determining whether an allegedly retaliatory action is materially adverse, courts look to indicia such as whether the action affected job title, grade, hours, salary, or benefits or caused a diminution in prestige or change in standing among coworkers" (internal quotation marks and ellipses omitted)).

[2] *Burlington*, 548 US at 68. See also, *Cheatham v DeKalb Co, Georgia*, 682 Fed Appx 881, 890 (CA 11, 2017) (finding that the plaintiff did not identify any "serious and material change in the terms, conditions, or privileges of employment" deriving from counseling, and thus it did not constitute an adverse employment action); *Woods v Washington*, 475 Fed Appx 111, 112–13 (CA 9, 2012) (holding that there was no triable fact as to whether the plaintiff suffered an adverse employment action resulting from either "Formal Counseling" or "Final Counseling" because neither action affected his compensation, workplace conditions, responsibilities, or job status).

[3] See *Johnson v TCB Const Co, Inc*, 334 Fed Appx 666, 671 (CA 5, 2009) (holding that an added 30-35 minute commute was not an adverse employment action when there was no evidence that the added commute was unreasonable); *Webb v Round Rock Indep Sch Dist*, 595 Fed Appx 301, 303 (CA 5, 2014) (holding that the plaintiff failed to demonstrate that an added 16-mile commute was an adverse employment action because she failed to submit any evidence that it would dissuade a reasonable employee from making a discrimination claim).