[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13358

_____

D. C. Docket No. 06-00278-CV-F-N

ALVERENE D. BUTLER,

Plaintiff-Appellee,

versus

ALABAMA DEPARTMENT OF
TRANSPORTATION,
MARK T. WAITS, Dist. Engr.,
in his individual and official capacity,
PATRICK T. JACKSON, Supervisor,
in his official and individual capacity,

Defendants-Appellants,

JOE MCINNES, Director, in
his official capacity,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(July 30, 2008)**

Before BLACK and CARNES, Circuit Judges, and RESTANI,[*] Judge.

CARNES, Circuit Judge:

Alvarene Butler is black and Karen Stacey is white. They both worked for the Alabama Department of Transportation. One work day in January of 2005 they were going to lunch together. Stacey was driving a pickup truck, and Butler was the only passenger.

On the way to lunch, the truck collided with another vehicle, which was driven by a black male. After the collision, Stacey turned to Butler and asked: "Did you see that? Did you see that stupid mother fucking nigger hit me?" A few minutes later, when the driver of the other vehicle was attempting to re-route traffic around the accident, Stacey said: "Look at him now. Now that stupid ass nigger down there is trying to direct traffic. I hope something come [sic] over that hill and run over his ass and kill him." Butler understandably found Stacey's use of racial epithets offensive. She did not, however, believe that Stacey's words were directed at her.

Later that day, while she was at the hospital receiving treatment for chest pains caused by the accident, Butler tried to inform her immediate supervisor, Patrick Jackson, about Stacey's offensive language. As Butler was trying to tell

[*] Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

2

Jackson what happened, he interrupted her and told her to stop. Other than that one attempt, Butler did not try to inform Jackson, or any other supervisor, about the incident until three months later.

In April of 2005 Stacey complained to Jackson that Butler was telling their co-workers that Stacey had used racial epithets, which Stacey denied. Jackson asked Butler to meet with him about it. She did and during that meeting told Jackson that Stacey had indeed used racial epithets of the nature and in the circumstances we have already described. Jackson told Butler he would investigate it.

Later that same month, Butler and Stacey had a heated argument at a job site in front of other ALDOT employees about the time in January when Stacey had used the racial epithets in front of Butler. As we have already mentioned, Butler had told some of her co-workers about the incident. One of them had told Stacey, and Stacey confronted Butler about it. The blow up stopped work at the job site, and Jackson ended up giving Butler a written reprimand for her part in that confrontation, citing her for inattention to her job and for disruptive conduct. He did not, however, reprimand Stacey.

Some time later in April of 2005, Jackson held a staff meeting and informed everyone in the department that they would be required to arrive for work at 7:00

a.m. They could no longer come in at 7:30 a.m. and make up the extra time by taking a short lunch break or by staying later, as some of them had been doing. The new policy affected both Butler and Stacey, because both of them had been coming in at 7:30 a.m. Butler obeyed this policy but Stacey did not. No action was taken against Stacey for disobeying the policy.

On April 12, 2005, Butler received an unfavorable annual evaluation from Jackson. The next day she filed a departmental grievance, contending that the reason she had received that evaluation was that she had accused Stacey of using racial epithets. After Butler filed this grievance other bad things happened to her (although the record is unclear as to exactly when some of them happened): she had previously approved leave taken away; she received a letter of reprimand based on her failure to correctly complete a training form; she received a "letter of written counsel" regarding excessive absenteeism; and she received a "letter of written counsel" for failing to follow call-in procedures for unscheduled absences. Butler, however, was never suspended or demoted. Butler did have to perform manual labor while Stacey, who held the same job title, did not. In addition, Butler applied for a promotion to become a civil engineer but did not receive the position. It is undisputed, though, that she never took the test necessary to qualify for that job.

4

In the fall of 2005, Butler applied for and was given a disability retirement from ALDOT, where she had worked for more than eleven years. Her retirement took effect on January 1, 2006.

**I.**

Butler, initially proceeding pro se, filed this lawsuit in March of 2006 claiming that ALDOT, its director Joe McInnes, and its employees Mark Waits and Patrick Jackson, had discriminated against her on the basis of her race, had retaliated against her for reporting Stacey's use of racial epithets, and had constructively discharged her. After obtaining counsel, Butler amended her complaint to sharpen her allegations and claims and to specify that the individual defendants' actions violated 42 U.S.C. § 1981. She also specified with the same factual allegations that ALDOT had violated Title VII of the Civil Rights Act.

The defendants answered Butler's amended complaint and, after conducting discovery, moved for summary judgment. The district court granted McInnes' motion for summary judgment in its entirety, removing him from the case. The court also granted summary judgment in favor of Waits and Jackson on Butler's retaliation claim and on her constructive discharge claim.

After summary judgment, the only claims remaining for trial were Butler's retaliation claims against ALDOT and her racially disparate treatment claims

5

against ALDOT, Waits, and Jackson. Those remaining retaliation and discrimination claims were based on the allegations that Butler had been: (1) forced to perform manual labor at job sites while Stacey, a white co-worker, was excused from doing the same work; (2) required to report to work at 7:00 a.m. while Stacey was permitted to arrive at 7:30 a.m.; (3) disciplined for violating the "call-in" rule for unscheduled absences while Stacey, who also violated this rule, was not; (4) "docked" pay for days she was absent even though she was approved for leave with pay; and (5) denied a promotion to the civil engineer position, while Stacey was considered for the position (but never got it).

The case proceeded to trial. After Butler rested, the defendants moved for judgment as a matter of law, contending that she had failed to prove either her retaliation or disparate treatment claims. The district court denied their motion. After the defendants rested, they once again moved for judgment as a matter of law, and the district court again denied their motion.

The jury returned a special verdict form finding that: (1) ALDOT had retaliated against Butler in violation of Title VII; (2) ALDOT had discriminated against Butler in violation of Title VII; and (3) Waits and Jackson had discriminated against Butler in violation of 42 U.S.C. § 1981. The jury awarded Butler $25,000 for lost benefits and earnings and $25,000 for her emotional

distress and suffering. The jury also returned an award of punitive damages in the amount of $150,000.

ALDOT, Waits, and Jackson filed a post-trial motion for judgment as a matter of law and also a motion seeking a new trial, or alternatively, a remittitur of the damages award. The district court denied those motions.

ALDOT, Waits, and Jackson appeal, contending that: (1) they were entitled to judgment as a matter of law on Butler's retaliation claims; (2) they were entitled to judgment as a matter of law on Butler's disparate treatment claims; (3) the district court made an erroneous evidentiary ruling concerning evidence of a previous, unrelated sexual harassment claim involving Butler; and (4) the damages awards were not supported by the evidence. We will start with the first contention and end with the second one.[1]

## II.

We review <u>de novo</u> the district court's denial of a motion for judgment as a matter of law. <u>See generally</u> <u>Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship</u>, 490 F.3d 1302, 1308 (11th Cir. 2007). "To establish a claim of retaliation under

---

[1] Because we are considering the denial of a motion for judgment as a matter of law, we have previously set out the facts in the light most favorable to the non-movant, Butler. <u>See</u> <u>Collado v. United Parcel Serv., Co.</u>, 419 F.3d 1143, 1149 (11th Cir. 2005); <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1192–93 (11th Cir. 2004).

7

Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59–71, 126 S. Ct. 2405, 2410–16 (2006)); see also Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995).

As it comes to us, Butler's retaliation claim rests solely on her contention that she was retaliated against for reporting to Jackson in April of 2005 that Stacey had used racial epithets in her presence the day they had the accident while on lunch break. She characterizes her statements to Jackson as opposition to an unlawful employment practice within the meaning of Title VII's opposition clause. 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee because "he has opposed any practice made an unlawful employment practice by this subchapter"). In Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956 (11th Cir. 1997), we emphasized that the belief required by this type of retaliation claim has both a subjective and an objective component:

> We previously have recognized that a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not

8

only show that he <u>subjectively</u> (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was <u>objectively</u> reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

<u>Id.</u> at 960 (internal citation omitted).

Butler never testified that she believed Stacey's use of vile language amounted to an unlawful employment practice by ALDOT (the only defendant against whom the retaliation claim is asserted). Instead, Butler argues that the fact that she eventually did tell Jackson what happened is enough to prove that she believed it was an unlawful employment practice. We have our doubts about that, but we need not decide whether there is enough evidence in the record to satisfy the subjective belief component of the retaliation claim because it is clear the claim fails to meet the objective reasonableness requirement.

Assuming that Butler did believe that Stacey's words immediately after the wreck amounted to an unlawful employment practice by ALDOT, her belief is not objectively reasonable. It is not even close. The incident consisted of Stacey's use of a racial epithet twice a few minutes apart. What Stacey said was, as Butler testified, "uncalled for" and "ugly." But not every uncalled for, ugly, racist statement by a co-worker is an unlawful employment practice. This incident

9

occurred away from work. It did not happen within the hearing of any supervisors. Butler admits that she never thought the epithets, deplorable as they are, were aimed at her. She has never even suggested that this one-time use of vile language away from work created a hostile work environment. She also conceded during cross-examination that the incident did not affect her ability to do her job.

The incident that gave rise to this case is nowhere near enough to create a racially hostile environment. We held in Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002), that in order "[t]o establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at 1344 (internal quotation marks and citation omitted). It is objectively unreasonable to believe that the use of racially discriminatory language on one occasion by one co-worker away from the workplace is enough to permeate the workplace with "discriminatory intimidation, ridicule, and insult" and to "alter the conditions of the victim's employment and create an abusive working environment." See id. This is what we said about that in the Little case:

> [A] racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII, 42 U.S.C. § 2000e-3(a), and opposition to such a remark, consequently, is not statutorily protected conduct.

10

Little, 103 F.3d at 961.  And, as we also explained in Little, "not every act by an employee in opposition to racial discrimination is protected.  The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."  Id. at 959 (quoting Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978).

While a plaintiff can prevail on a retaliation claim based on opposition to an employment practice that is not actually unlawful, we have to consider the controlling substantive law in this circuit when we assess whether a plaintiff's mistaken belief is objectively reasonable.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 & n.2 (11th Cir. 1998) (examining the objective reasonableness of an employee's belief that an employment practice is unlawful in light of existing substantive law).  Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable.  See id. at 1388–89; see also Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1317 (11th Cir. 2002) ("Finally, the plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable.  As we have stated previously, if the plaintiffs are free to disclaim

11

knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." (internal citations, brackets, and quotation marks omitted)).

Assuming that Butler actually believed that Stacey's offensive statements constituted an unlawful employment practice of ALDOT, that belief was not objectively reasonable. It follows that her retaliation claim fails as a matter of law and judgment should have been entered for ALDOT on it.[2]

### III.

ALDOT, Waits, and Jackson contend that the district court also erred in denying their post-trial motion for judgment as a matter of law on Butler's discrimination claims. First, they argue that the record shows that the only reason Butler and Stacey were treated differently was Stacey's personal relationship with Waits and Jackson. Second, they assert that, even if Butler were subjected to disparate treatment because of her race, she has not shown that ALDOT, Waits, or Jackson took any adverse employment action against her. We will start and end with the second argument.

---

[2] Because Butler's retaliation claim fails for want of an objectively reasonable belief that reporting Stacey's offensive language amounted to an unlawful employment practice by ALDOT, we need not decide if the actions she challenges would meet the standard set forth in Burlington N. & Sante Fe Ry. Corp. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) ("[The standard is whether] a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

12

To prevail on a discrimination claim under Title VII and § 1981, an employee must establish that "she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004); see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that § 1981 has the same "requirements of proof" and employs "the same analytical framework" as Title VII).

The non-discrimination provisions of Title VII require a plaintiff to show a change in the "compensation, terms, conditions, or privileges of [her] employment" in order to prevail. 42 U.S.C. § 2000e-2(a)(1). Courts use the phrase "adverse employment action" as a shorthand for that statutory language. Davis v. Town of Lake Park, Florida, 245 F.3d 1232 (11th Cir. 2001), is our leading case defining "adverse employment action":

> [T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Id. at 1239–40 (internal citations, brackets, and quotation marks omitted) (additional emphasis added).

13

Denial of a promotion can be an adverse employment action, but Butler has never complained about being denied any promotion except to civil engineer. She conceded to us that she was not qualified for that position because she had never taken the examination for that position, much less passed it.

None of the remaining things about which Butler complains, even taken collectively, constitutes a "serious and material change" in the terms, conditions, or privileges of employment." See id. at 1239. The job position that Butler held required her to perform some manual labor ; she does not contend otherwise. Nor does she contend that ever changed. As an engineering assistant, Butler's responsibilities included: performing field tests of soil, concrete, asphalt, and other materials; maintaining construction equipment and vehicles; operating that equipment; and performing engineering tasks. At trial, Butler testified that the "manual labor" she performed consisted of making concrete cylinders, running compaction tests, drawing cross sections, and taking measurements. None of those activities is outside the job description of an engineering assistant whose duties included monitoring road, highway, and bridge construction and performing the necessary tests and tasks required to do so. Butler does not argue to the contrary. Requiring an employee to perform her job is not a change in the terms, conditions, or privileges of her employment.

Similarly, the work day started at 7:00 a.m., so requiring Butler to be present for work at that time was also not an adverse employment action.  In any event, the record does not disclose that the 7:00 a.m. start policy was enforced against Butler but not Stacey.  Instead, it shows at most that Butler obeyed the policy while Stacey did not.  There is no evidence that anyone was ever disciplined for violating the policy.  Whether Butler would have been disciplined if she, too, had chosen to arrive after 7:00 a.m. is unknown.  Evidence that one employee follows a rule that another one violates is not evidence of discriminatory enforcement.

Butler did receive warnings about her violations of ALDOT's policy that workers "call-in" to report absences, and she was reprimanded because of the disruptive confrontation with Stacey on the job site three months after the wreck. But those warnings and that reprimand did not lead to any change in the terms, conditions, or privileges of employment.  See Davis, 245 F.3d at 1242 (explaining that a Title VII discrimination claim "rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment.  An employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation.  But the protections of Title VII simply do

15

not extend to everything that makes an employee unhappy." (internal quotation marks and citation omitted)).

There is also the matter of Butler's leave balance. She testified, and it is undisputed, that she took some sick leave and paid for it by having her leave balance reduced by the amount she had taken. After that happened, the Human Resources Bureau of ALDOT sent a memorandum to Waits informing him that because Butler's leave had not been properly approved (there was no leave slip for it) she should not have been paid for that leave but instead should have had her pay reduced with her leave balance left alone. As a result of that memorandum Butler's pay was reduced by the amount of the leave she had taken, but her leave was restored to the level it had been before she took the leave in question. The document that reflects the change shows that the correction involved only four hours insofar as Butler was concerned. (The document also shows that the same or similar corrections were made to three other employees' leave and pay accounts in varying amounts.)

Until the adjustment was made, Butler had the benefit of pay that she was not entitled to receive because the reduction should have been to her pay instead of her leave balance. After the adjustment, she was free to schedule and take leave equal to the amount of the reduction in pay. We seriously doubt that such a minor,

16

accounting-driven adjustment amounts to a serious and material change in the "terms, conditions, or privileges of employment."[3]

But even if it were, Butler has not established that the leave balance correction was discriminatory. Stacey is the only person outside Butler's protected class that Butler has put forward as a comparator. We have searched the entire record, and the only evidence we have found about the application of ALDOT's leave policies to Stacey is her official ALDOT leave records and Butler's own testimony about Stacey's compliance with the "call-in" rule.

Butler testified that Stacey had violated the "call-in" rule and had taken more unscheduled leave than she was entitled to. When pressed on cross-examination to explain Stacey's violation of the rule, all Butler said was that in one month Stacey exceeded the two "call-in" absence limit by being absent a total of three times. When asked how she knew Stacey had violated the policy, Butler said, "Because [Stacey] stated it to me." Butler was then asked, "She told you [']I'm in violation of the policy[']?" Butler replied, "No, she didn't use those terms." When asked what Stacey actually said, Butler recounted the following:

---

[3] As we pointed out earlier, Butler no longer works at ALDOT because she applied for and was granted disability retirement. In her application she indicated that she wished to receive a "lump sum payment" for unused sick leave. Her application was approved. That means that Butler's pay in the form of her lump sum payment for unused leave was higher (by four hours) than it would have been had no adjustment ever been made.

17

> That she [Stacey] called Mr. Jackson and told him that she would be out yet another day, she had already been out twice, and asked Mr. Jackson was he going to charge her leave without pay. And Mr. Jackson responds to her "Don't make me get angry."

That's it. We do not know when this purported violation of the "call-in" policy occurred because Butler did not say. Butler did not testify that Stacey had been allowed to use leave instead of pay. She did not testify that Stacey's pay hadn't been reduced. From Butler's testimony, it is just as likely that Stacey's pay was reduced to reflect the extra "call-in" leave she took as it is that her pay was not reduced.

ALDOT introduced some of Stacey's payroll and leave records. Those records show that Stacey took sick leave, annual leave, and holiday leave in 2005 and that some of her leave was unscheduled "call-in" leave. For the time period covered by those records, September of 2005 through January of 2006, Stacey took no unapproved leave, so her pay should not have been reduced.

Butler's testimony does not demonstrate that Stacey was treated differently with regard to ALDOT's leave policies than Butler was. The records introduced by ALDOT do not show different treatment either. Butler has the burden to establish that a similarly situated person outside of her protected class was treated differently. See Wilson, 376 F.3d at 1087. With no evidence in the record to show disparate treatment, Butler failed to carry her burden. Therefore, even if the

18

adjustment of her leave balance was an adverse employment action, which we doubt, Butler's discrimination claim fails. ALDOT, Waits, and Jackson were therefore entitled to judgment as a matter of law on Butler's discrimination claims, just as they were on her retaliation claims.

## IV.

We **REVERSE** the judgment in favor of Butler, and we **REMAND** the case for entry of judgment in favor of ALDOT, Waits, and Jackson.