[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15392
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 22, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00433-CV-CAR-5


KELVIN ROSS,

                                                        Plaintiff-Appellant,

                          versus

CITY OF PERRY, GEORGIA,
CHIEF GEORGE POTTER,
In his official capacity as Chief
of the Department of Public Safety
for the City of Perry and in his
individual capacity,

                                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 22, 2010)

Before EDMONDSON, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Kelvin Ross, a black man, appeals the grant of summary judgment in favor of his former employer, the City of Perry, and the City's Department of Public Safety Chief, George Potter, in Ross's employment discrimination lawsuit, brought pursuant to Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983.[1] No reversible error has been shown; we affirm.

Ross alleged that, while he was employed as a firefighter with the City, he was discriminated against because of his race and retaliated against because he assisted and supported his female coworker and fellow firefighter, Renee Kitchens, in filing a sexual harassment grievance. His termination stemmed from an internal affairs investigation conducted by the City about the grievance.

The grievance stemmed from an incident where Kitchens's supervisor wore a t-shirt and displayed it to many firefighters at a shift change, including Ross and Kitchens. The t-shirt offended Kitchens.[2] More than two weeks after the incident,

---

[1]We review de novo the district court's grant of summary judgment. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). And we view the evidence in the light most favorable to the non-moving party. Id.

[2]The t-shirt depicted another fireman laying on the front of a fire truck, dressed in shorts, slippers, a hat, and a shirt pulled up exposing his stomach. His legs were spread apart and something appeared to be in his mouth. Above the picture were the words "Stop it before it spreads," and beneath the picture was a caption that said "Just Say No." Around the picture was a red circle with a slash going through the picture.

Kitchens wrote a grievance about it and had Ross proofread the grievance. She also had Ross put the envelope containing the grievance under the door of the Deputy Chief's office. Kitchens earlier had filed a sexual harassment lawsuit against the previous Deputy Chief.

Upon receiving the grievance, the Deputy Chief informed Potter about it; and Potter, although he did not find the t-shirt offensive, ordered an internal affairs investigation given Kitchens's earlier issues with harassment. The appointed investigators interviewed Ross as part of the investigation. Ross initially told investigators that he had not read Kitchens's letter but later admitted that he had proofread it for her. Ross also admitted that, although Kitchens found the t-shirt "offensive," he only thought it "unprofessional."

Upon completion of the investigation, the investigators determined that Ross had lied in a departmental investigation. Potter informed Ross in a memorandum that the proposed response for his behavior was termination and that a show cause hearing would be conducted where Ross could present or discuss evidence pertinent to the charges. Ross presented no evidence at the hearing. Potter gave him the choice between resigning voluntarily or being terminated. Immediately following the hearing, Ross resigned.

The district court determined that Ross made no prima facie case of

discrimination because he did show that he suffered an adverse employment act. The court concluded that, under the totality of the circumstances, Ross's resignation was voluntary and, thus, did not constitute a constructive discharge. On appeal, Ross argues that he was coerced into resigning and that his resignation was not voluntary.

An involuntary resignation that constitutes a constructive discharge is an adverse employment act under Title VII: a necessary element for a prima facie case of discriminatory discharge. Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993).[3] An employee's resignation will be deemed involuntary where the employer (1) forces the resignation by coercion or duress, or (2) obtains the resignation by deceiving or misrepresenting a material fact to the employee. Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995).

We agree with the district court that Ross was not coerced into resigning. Certain factors inform our decision. See id. (listing factors to consider in analyzing whether an employee was coerced into resigning). Ross was given advance notice of his show cause hearing. By the notice, he was informed of the violations, the proposed act of termination, and his opportunity to defend against the accusations.

_____

[3]Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), applies. Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1275 n.5 (11th Cir. 2008).

Although Potter told him to sign a resignation letter at the hearing, the advance notice had given Ross reasonable time to think over his alternatives and strategies in response to a possible termination. But Ross presented no defenses, arguments, or explanations at his hearing. At the hearing, Ross also could have asked for more time to consider the choices and to seek help; but he did not do so. See id. at 1568-69 (explaining that an employee given the choice of resigning or facing criminal charges resigned voluntarily under the circumstances).

Nothing indicated that Ross failed to understand the nature of the choices he was given. Although Ross might have believed he had no choice but to resign, he did, in fact, have the choice to refuse to resign and could later have appealed the termination to the city manager. See id. at 1568 (resignations can be voluntary, even where the only alternative to resignation is facing possible termination, because the employee had a choice and could "stand pat and fight"). That Ross may have been intimidated by Potter's tone at the hearing and by his insinuations about Ross and Kitchens and that Ross may have perceived his only option to be resignation is unimportant. See id. ("[t]he assessment of whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation").

We discern no error in the district court's alternative analysis that, even if

Ross had made a <u>prima</u> <u>facie</u> case, the City had legitimate, non-discriminatory reasons for terminating his employment and that Ross did not show that these reasons were pretextual. The record reasonably can be read to confirm that Ross was untruthful and evasive to investigators about reading the grievance that he believed was delivered to the Chief Deputy.[4]

Ross contends that he has shown pretext because the investigation into the grievance was a "sham" from the outset, designed to target him. But nothing indicates that the investigation was a sham: upon learning of the grievance, Potter followed proper procedures and launched an investigation. Investigators interviewed Kitchens first; she indicated Ross's involvement with the grievance. Ross logically was interviewed as the person who delivered the grievance. Ross's many disagreements with how the evaluation was conducted or how other employees involved with the t-shirt incident were disciplined do not illustrate pretext. <u>See</u> <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1543 (11th Cir. 1997) (plaintiff cannot establish pretext merely by questioning the wisdom of the employer's reasons where the reason is one that might motivate a reasonable employer).

About retaliation, the district court determined that Ross did not make a

_____

[4]The actual grievance submitted by Kitchens was handwritten but the one Ross proofread was typed.

6

prima facie case because he did not show an objectively reasonable and subjectively genuine belief that he was engaging in statutorily protected activity: opposing sexual harassment. On appeal, Ross disagrees. To make a prima facie case of retaliation, a plaintiff must, in part, show that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices; and the plaintiff must show that this belief objectively is reasonable in the light of the facts and record presented. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008).

Ross did not show that his belief was subjectively genuine. The wording of the grievance that he read did not mention or allege sexual harassment. And Ross testified that he personally did not find the t-shirt offensive. Nor, in the light of the facts and record presented, was the belief that the t-shirt incident was unlawful, sexual harassment of Kitchens objectively reasonable. The picture on the shirt contained no nudity or profanity, did not display an identification of the department, and the message to be conveyed was not even immediately apparent. So, Ross's assistance to Kitchens in filing the grievance was not statutorily protected activity; and he failed to make a prima facie case of retaliation.

AFFIRMED.