[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14839
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-03743-TCB

RICHARD VALENTINO HARRISON,

Plaintiff-Appellant,

versus

BELK, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 5, 2018)

Before MARTIN, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Richard Harrison, proceeding pro se,[1] appeals the district court's grant of summary judgment in favor of his former employer, Belk, Inc. ("Belk"), in his civil action alleging race and sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981. No reversible error has been shown; we affirm.

Plaintiff (a black male) began working as a seasonal sales associate at a Belk store in Douglasville, Georgia, as in November 2014.  In December 2014, Plaintiff accepted a permanent position as a part-time sales associate in the men's department.  Plaintiff was described as a "stellar associate" and as being "often in the top sales."

In March 2015, Plaintiff began accusing his managers and co-workers of harassment and of discriminatory practices.  On 30 March, Plaintiff met with store manager Brenita Britt, sales team manager (and Plaintiff's supervisor) Chrissy Wiley, and Human Resources ("HR") associate Madeline Grindle.  Plaintiff complained that he was being treated unfairly by two white female co-workers. For example, one of Plaintiff's co-workers assigned him a specific area of responsibility, spoke rudely to Plaintiff, called Plaintiff an angry person, went to

---

[1] We construe liberally pro se pleadings.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

lunch without telling Plaintiff, and left a folding table in Plaintiff's area. Plaintiff complained that another co-worker stole customers from him. Plaintiff said he believed he was being discriminated against based on his gender, race, and nationality. Plaintiff also reported that he had overheard two white sales associates from other departments discussing a customer dispute. During the conversation, one of the associates said "I'll bet they were black" and asked whether the customer had "pulled the race card."

On 9 April, Plaintiff filed an internal complaint with Belk's HR Department, complaining about incidents of perceived harassment and discrimination. Throughout April and May, Plaintiff supplemented his internal complaint by alleging twenty more instances of supposed harassment and discrimination.

On 26 April, sales team manager Freddie Johnson (a black female) emailed Britt to report an incident involving Plaintiff. Johnson told Britt that Plaintiff complained to her that there was a "cult" at the store that was against him. Johnson said that Plaintiff became defensive and outraged. Johnson reported that she was "literally scared" by Plaintiff's conduct and that the episode had also upset another sales associate. About the incident, Plaintiff testified that he complained to Johnson about being harassed and that he was upset and angry about being harassed.

3

On 29 April, Britt issued Plaintiff a written "Corrective Interview Form," marked "final warning." The warning described an incident on 27 March where Plaintiff was asked by a manager to complete a task and "became verbally disrespectful, yelling and acted very unprofessional with management." The warning also described the incident between Plaintiff and Johnson, noting that Plaintiff had been verbally disrespectful and raised his voice in anger to a manager; Plaintiff also later approached "aggressively" the same manager complaining that associates were talking about him. Plaintiff was advised that such conduct could result in further disciplinary action, including termination of his employment.

On 4 May, HR Associate Grindle documented concerns that several managers had expressed to her about their personal safety around Plaintiff. On 29 May, Plaintiff found a piece of string that he described as a "noose" in the men's fitting room. Plaintiff informed Britt about the "noose" and expressed concern about his safety in the workplace.

On 5 June 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged he had been subjected to discrimination and retaliated against based on his race. He claimed he had been issued a reprimand, that his hours were reduced, that he discovered a "noose" in the men's fitting room, and that he was told to sign a confidentiality agreement. Belk received Plaintiff's EEOC charge on 15 June.

4

Meanwhile -- also on 5 June -- Britt issued Plaintiff a second "Corrective Interview Form" marked "final warning," noting an incident in which Plaintiff got upset and confrontational with a manager, when Plaintiff was asked to complete a routine status check. In the comments section, Britt wrote "we have had many conversations about your behavior. . . . This is another example of your disruptive and disrespectful behavior." Plaintiff was again advised that his disrespectful behavior could result in termination of his employment.

On 20 September 2015, Amber Smith became the new store manager at the Douglasville Belk store. On 28 September, Plaintiff met with Smith and with Grindle to share his concerns about the alleged ongoing harassment. In late September, Smith witnessed an incident in which Plaintiff argued with Wiley and spoke to Wiley in a loud and disrespectful tone. On 2 October 2015, Smith terminated Plaintiff's employment for "gross misconduct/insubordination."

Thereafter, Plaintiff filed a second charge of discrimination with the EEOC, alleging discrimination and retaliation based on his sex and his race. The EEOC issued Plaintiff a right-to-sue letter; Plaintiff then filed this civil action.

The magistrate judge recommended granting Belk's motion for summary judgment. Over Plaintiff's objections, the district court adopted the magistrate judge's recommendation and granted summary judgment in favor of Belk.

5

I.

We first address Plaintiff's argument that the district court erred in denying Plaintiff's "Emergency Notice of Objection," in which Plaintiff sought to strike Belk's untimely-filed motion for summary judgment. In addition to the untimeliness of the motion, Plaintiff also complained that Belk's lawyer contacted the district court ex parte about "technical difficulties" encountered in filing the motion and complained that Belk failed to attach a copy of Plaintiff's deposition transcript to the motion.

As an initial matter -- as Plaintiff concedes -- a motion for summary judgment is no "pleading" and, thus, may not be attacked by a motion to strike under Fed. R. Civ. P. 12(f). See 2 Moore's Federal Practice - Civil § 12.37 (Matthew Bender 3d ed.).

That Belk's motion for summary judgment was filed twenty minutes late is undisputed. We have said, however, that a district court may consider an untimely-filed motion for summary judgment if doing so is in the interest of judicial economy. Thomas v. Kroger Co., 24 F.3d 147, 149 (11th Cir. 1994) (finding no abuse of discretion when the district court considered a summary judgment motion filed 24 days late).

6

In denying Plaintiff's request to strike the motion for summary judgment, the district court explained that consideration of the motion and of Plaintiff's response would "best allow the court to make a reasoned determination of the issues presented." The district court also acknowledged -- and admonished Belk's lawyer for -- the procedural errors involved in filing the motion. Still, the district court determined both that (1) Plaintiff was not prejudiced and that (2) striking the motion for summary judgment would be unduly prejudicial to Belk given that Belk's lawyer was at fault. In the light of the procedural errors, however, the district court granted Plaintiff additional time and pages with which to respond to Belk's motion.

No abuse of discretion taints the district court's ruling. Belk's motion was late by mere minutes, and judicial economy favored the district court's consideration of the motion. Moreover, because Plaintiff was granted additional time to respond, he has failed to show that he was unduly prejudiced as a result.

II.

We review de novo the district court's grant of summary judgment. Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1293 (11th Cir. 2013). We view the evidence and draw all reasonable inferences in the light most favorable to

7

the non-moving party.  Id. at 1294.  In considering a motion for summary judgment, courts "must avoid weighing conflicting evidence or making credibility determinations."  Id.

First, we reject Plaintiff's assertion that the magistrate judge and the district court "cherry-picked" the evidence or construed improperly the evidence in favor of Belk.  The district court need not accept Plaintiff's factual allegations that are based only on speculation and conjecture.  See id. (in considering a motion for summary judgment, "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.").

A.    Discrimination

Title VII makes it unlawful for an employer to discriminate on the basis of an employee's race or sex.  42 U.S.C. § 2000e-2(a)(1).  The elements of a section 1981 claim in the employment context are the same as the elements of a Title VII claim.  Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000).  Plaintiff bears the ultimate burden of proving -- by a preponderance of the evidence -- that Belk discriminated unlawfully against him.  See Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008).

In evaluating Plaintiff's claim for discrimination -- a claim Plaintiff said expressly was based on "mixed-motives" -- the district court applied the standard applicable to a "mixed-motives" case based on circumstantial evidence.[2]  Under that standard, Plaintiff must offer evidence sufficient for a reasonable factfinder to conclude that (1) Plaintiff suffered an adverse employment act; and (2) Plaintiff's race or sex was a motivating factor for the adverse employment decision.  See Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1239 (11th Cir. 2016).  Plaintiff alleges three adverse employment acts: the issuance of the "final warnings," his not being considered for a full-time position, and the termination of his employment.

The record demonstrates that Britt issued both "final warnings" in response to Plaintiff's unprofessional and disrespectful conduct toward management.  Although Plaintiff asserts broadly that management avoided disciplining white female employees, he presented no evidence of other employees -- of whatever race or sex -- who engaged in similar disrespectful conduct and who received no discipline.  Plaintiff also presented no evidence contradicting Smith's testimony

---

[2] Plaintiff now challenges the district court's use of the "mixed-motives" standard and contends the district court should have applied the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  Because we conclude that Plaintiff failed as a matter of law to prove discrimination under a mixed-motives theory, he necessarily would be unable to satisfy the more burdensome standard under the McDonnell Douglas framework.  For example -- as the district court noted -- Plaintiff has identified no similarly-situated employee outside his protected class who was treated more favorably.  Plaintiff has also failed to produce sufficient evidence from which a reasonable factfinder could conclude that Belk's asserted legitimate, nondiscriminatory reason for its adverse employment decisions were a pretext for unlawful discrimination.  For background, see Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160 (11th Cir. 2006).

that, under certain circumstances, for a manager to issue a final written warning without first giving a verbal warning might be appropriate. Evidence also exists that Britt had spoken with Plaintiff about his conduct before issuing him a written warning.

Plaintiff next contends that Belk's discriminatory animus is demonstrated by evidence that Belk filled two full-time positions with white females. The record shows that both women were already full-time employees who transferred from other departments. Both women (who had worked for Belk for 3 years and for 7 years) also had seniority over Plaintiff, who had only been employed by Belk for less than a year. Under these circumstances, that the full-time positions were filled with white women is not enough by itself to draw a reasonable inference of discrimination.

Plaintiff has also failed to demonstrate that his race or sex was a motivating factor in the decision to terminate his employment. Smith says she decided to fire Plaintiff after witnessing him speaking to another manager in what Smith perceived to be a disrespectful tone: behavior that Plaintiff had already been twice warned could result in termination of his employment. Although Plaintiff disputes Smith's perception that he behaved in a disrespectful way, he does not dispute either that he had a disagreement with Wiley (the other manager) or that he had a documented history of disrespectful conduct toward management. Plaintiff has

10

presented no evidence from which a reasonable factfinder could infer that Plaintiff's race or gender played a role in Smith's decision.

Plaintiff has also failed to demonstrate liability based on a "cat's paw" theory. Under a "cat's paw" theory, liability may be established if the plaintiff shows that the decisionmaker merely "followed the biased recommendation [of a non-decisionmaker] without independently investigating the complaint against the employee." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999). Although Smith may have spoken with other Belk managers and HR associates about Plaintiff's employment history, Smith also spoke with Plaintiff about Plaintiff's concerns about supposed alleged discrimination. Smith also observed personally the kind of disrespectful conduct that was the subject of Plaintiff's earlier "final warnings." Insufficient evidence exists that Smith was unduly influenced by others in her decision to terminate Plaintiff's employment.

B.    Retaliation

Employers are barred from retaliating against an employee because he opposed a practice made unlawful by Title VII (the "Opposition Clause") or for making a charge or participating in an investigation pursuant to Title VII (the

"Participation Clause").  See 42 U.S.C. § 2000e-3(a); Equal Emp't Opportunity Comm'n v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174-75 (11th Cir. 2000).

To establish a prima facie case for retaliation under Title VII or section 1981, a plaintiff must show that he engaged in statutorily protected activity and that he suffered a materially adverse employment act that was causally related to the protected activity.  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012).  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."  Shannon v. BellSouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quotation omitted).  Causation may be inferred when a close temporal proximity exists between the protected activity and the materially adverse act.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  "But mere temporal proximity, without more, must be 'very close.'"  Id.

Once a plaintiff establishes a prima facie case of retaliation, the employer must articulate a legitimate, non-retaliatory reason for the challenged employment act.  Then, in the light of that stated reason, the burden shifts to the plaintiff to offer evidence that the employer's stated reason is pretextual.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  A plaintiff must show that his

12

"protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).

About Plaintiff's internal complaints of discrimination with Belk's HR department, the district court determined that Plaintiff had failed to offer evidence that he had a reasonable, good faith belief of discrimination and failed to show that the complained-of conduct was motivated unlawfully by a discriminatory animus.

When asserting a retaliation claim under Title VII's Opposition Clause, a plaintiff must show both "that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, [and] that his belief was objectively reasonable in light of the facts and record presented." Butler v. Ala. DOT, 536 F.3d 1209, 1213 (11th Cir. 2008) (emphasis in original).

Plaintiff's internal complaints stemmed chiefly from everyday disagreements with his co-workers. The Supreme Court has stressed that Title VII provides no protection against "those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006).

Only two of Plaintiff's complained-of incidents seem to have a connection to race: (1) that Plaintiff overheard a sales associate from another department ask whether a customer was black and had "pulled the race card;" and (2) Plaintiff's finding what looked like a "noose" in the fitting room. Plaintiff cannot, however,

13

demonstrate an objectively reasonable belief that either of these incidents constituted unlawful discrimination by Belk. We have said that "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII . . . , and opposition to such a remark, consequently, is not statutorily protected conduct." Butler, 536 F.3d at 1213. About the perceived "noose," no evidence exists about the identity of the person who left it in the fitting room, including whether the person that left it was even a Belk employee, as opposed to a customer or the like. Because Plaintiff's internal complaints to Belk's HR Department constitute no statutorily protected activity, Plaintiff has failed to establish a prima facie case of retaliation under the Opposition Clause.

Plaintiff has also failed to satisfy his burden of proving retaliation based on his filing of an EEOC complaint. Because Plaintiff's two "final warnings" (dated 29 April and 5 June) were issued before Belk first became aware of Plaintiff's EEOC charge on 15 June, Plaintiff cannot demonstrate the requisite causal connection between his protected activity and the adverse act.

Plaintiff also complains that Belk retaliated against him by assigning him reduced hours in May and in August 2015. First, Plaintiff's argument based on his May work schedule fails because Plaintiff's May hours were scheduled before Plaintiff filed his EEOC charge in June. The record shows that Plaintiff worked

14

these hours:  126 hours in February; 111 hours in March; 147 hours in April; 93 hours in May; 169 hours in June; 114 hours in July; and 100 hours in August. Because Plaintiff's work hours for August 2015 were within the range of hours Plaintiff had been assigned to work in other months -- both before and after his EEOC complaint was filed -- he can demonstrate no causal connection between his scheduled work hours and his EEOC complaint.

Plaintiff has also failed to produce evidence sufficient for a reasonable factfinder to infer a causal connection between the filing of his EEOC complaint and the termination of his employment.  Nearly four months elapsed between the filing of the EEOC complaint in June and Plaintiff's termination in October: the two events are too far removed in time to infer a causal connection based on temporal proximity.  See Thomas, 506 F.3d at 1364 (noting that three to four months between the protected activity and the adverse employment act is not enough, by itself, to establish a causal connection).

Plaintiff argues that a causal connection can be inferred based on the temporal proximity between Smith first becoming aware of Plaintiff's EEOC charge and her decision to fire him.  Even to the extent Plaintiff could establish a prima facie case of retaliation based on the timing of Smith's involvement, Plaintiff has failed to present evidence sufficient to demonstrate that Smith's proffered reason for terminating his employment -- gross

15

misconduct/insubordination -- was a pretext for unlawful retaliation.  Plaintiff has not rebutted head-on Smith's testimony that she decided to fire Plaintiff after she witnessed a dispute between Plaintiff and another manager: conduct that Plaintiff had been warned could result in termination of his employment.  See Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (to demonstrate pretext, a "plaintiff must meet the reason proffered head on and rebut it.").

AFFIRMED.