[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15068
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cv-00434-HLA-MCR

ELITE AMENITIES, INC.,

                                                        Plaintiff - Appellant,

versus

JULINGTON CREEK PLANTATION COMMUNITY DEVELOPMENT
DISTRICT,

                                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 16, 2019)

Before TJOFLAT, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

This case was brought by Elite Amenities, Inc., an entity that provides amenity-management services (think pool maintenance), against Julington Creek Plantation Community Development District.  Elite and the Community's board entered into a contract for services, a contract that the board subsequently terminated (and could terminate without cause).  Shortly before being terminated from the contract, Elite's owner reported to the board's business-operations advisor inappropriate conduct, against one of its black employees, by a board member.  That conduct was that the board member treated the employee in a "harsh and unfair manner" compared to the white employee he had replaced and that the board member was "critical" of and "disrespectful" of the employee "for no good reason[]."

Elite brings to our attention two specific manifestations of this conduct.  The board member visited the employee's office "numerous" times, and during some of these visits the board member went through papers on the employee's desk "as though he was not engaging in ethical behavior."  And the board member sent emails to the employee, some of which were "very pointed."  That's it.

Upon being terminated from the contract, Elite cried foul play, alleging that its email reporting of the conduct was a statutorily protected activity, that it was

2

terminated from the contract for that reporting, and that, accordingly, the termination violated 42 U.S.C. § 1981.[1]  We disagree.

To constitute a protected activity, the plaintiff must have an objectively reasonably belief that unlawful employment practices are afoot.  Here, the owner's belief, assuming it was subjectively held, was not objectively reasonable.  Because the employee was not fired (or subjected to any discrete act), the only possibly unlawful employment practice was that the Community oversaw a hostile work environment.  But proving a hostile work environment is a heavy burden—one that cannot be met merely by showing unprofessional encounters and harshly worded emails.  So because the owner could not have reasonably believed that the Community oversaw a hostile work environment, she was not engaged in a statutorily protected activity when she sent the email.  As such, Elite's retaliation claim fails as a matter of law, and the District Court's grant of summary judgment for the Community was warranted.

I.

We review *de novo* a district court's grant of a motion for summary judgment, "viewing all of the facts in the record in the light most favorable to the

---

[1] Elite also brought claims under 42 U.S.C. § 1983 and under Florida law, neither of which are before us.  The Community counterclaimed for breach of contract, a claim that the District Court declined to exercise supplemental jurisdiction over upon granting summary judgment on Elite's claims.  *See* 28 U.S.C. § 1367(c).  The Community has not cross-appealed the Court's decision not to exercise jurisdiction over the counterclaim.

non-movant." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1153 (11th Cir. 2017) (quoting *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015)).  We affirm upon a showing that there is "'no genuine dispute as to any material fact' such that 'the movant is entitled to judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(a)).

## II.

To prevail on a retaliation claim under § 1981, a plaintiff must prove "that she engaged in statutorily protected activity, that she suffered an adverse action, and that the adverse action was causally related to the protected activity." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018).[2]  In issue here, among other things, is the first element—whether the owner's email constituted a "statutorily protected activity."

The plaintiff, to be engaged in statutorily protected activity, must show "that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  Thus, "this standard has both a subjective and an objective component," a facet of the law we have identified as "critical."  *Id.* (citation

---

[2] "We examine claims of . . . retaliation under the same legal framework regardless of whether the plaintiff invokes section 1981 or section 2000e." *Jefferson*, 891 F.3d at 919.  As such, we incorporate into our analysis caselaw analyzing retaliation claims under both statutes.

omitted).  "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented."  *Id.* (citation omitted).

The only unlawful employment practice that the owner could have identified here is something that gave rise to, what our cases call, a "hostile work environment claim."  *See Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (per curiam).  This is so because Elite has not identified any "discrete acts" that the employee was subjected to, *see McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008), such as "termination, failure to promote, denial of transfer, or refusal to hire," *Gowski*, 682 F.3d at 1313 (quoting *McCann*, 526 F.3d at 1378).  At most, rather, it has identified "'repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult.'"  *See id.* at 1311 (quoting *McCann*, 536 F.3d at 1378).

To prevail on a hostile work environment claim, a plaintiff must show that "(1) he or she belonged to a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his or her employment and create an abusive working environment, and (5) a basis exists for holding the employer liable."  *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016).  Because it is dispositive

5

of our analysis, we focus on the fourth element—the requirement that the harassment be "sufficiently severe or pervasive."

Whether conduct is sufficiently severe or pervasive requires us to assess "the totality of the circumstances." *Gowski*, 682 F.3d at 1312. We consider "(1) the frequency of the conduct;[3] (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). Like other factor tests, "'no single factor is required' to establish the objective component." *See Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1287 (11th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)).

## A.

We observe at the outset that this case much resembles *Trask v. Secretary, Department of Veterans Affairs*, where we identified insufficient evidence of an objectively hostile work environment and thus affirmed the district court's grant of summary judgment for the defendant. 822 F.3d at 1196. The plaintiffs there "broadly cite[d] to several instances in which . . . management behaved rudely and made comments that plaintiffs considered offensive, belittling, and humiliating."

---

[3] As indicated by the cases below, frequency also encompasses duration.

*Id.* These "struggles," *id.*, we explained, "exemplifie[d] 'the ordinary tribulations of the workplace, which does not constitute actionable harassment.'" *Id.* (alterations adopted) (quoting *Gupta*, 212 F.3d at 586). As in *Trask*, the conduct here was, at worst, unprofessional, and so no person could reasonably believe that the Community oversaw a hostile work environment. We hold that the board member's uninvited, unpleasant office visits; physical engagement with the employee's work papers; and harsh emails are nothing more than ordinary tribulations of the workplace.

In addition to analogizing to *Trask*, we deem it prudent to march through the four factors that this Court has enumerated. *See Gowski*, 682 F.3d at 1312. As explained below, not a single factor weighs in Elite's favor.

### B.

First, the conduct was not frequent. When the owner wrote the email, she had witnessed "numerous" interactions between the employee and the board member, but the employee had worked at the company for merely three weeks. *Cf. Smelter*, 904 F.3d at 1285, 1294 (reversing the district court's grant of summary judgment for the defendant when among other reasons conduct occurred "every day" for "two months" (citations omitted)); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1245, 1251−54 (11th Cir. 2014) (vacating the district court's grant of summary judgment for the defendant when among other reasons conduct occurred

7

"all the time," "every day," "every morning," "regularly," "frequently," "numerous times," and "on multiple occasions" over a period of between one and five-and-a-half years); *Gowski*, 682 F.3d at 1313 (affirming the district court's entry of judgment pursuant to a jury verdict for the plaintiff when among other reasons conduct occurred "over a period of years"); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1287, 1303 (11th Cir. 2012) (vacating a district court's grant of summary judgment for the defendant when among other reasons conduct occurred "seven" times over the course of a "year's employment"). The conduct here, occurring only a few times over three weeks, is thus unlike cases in which the first factor has weighed in the plaintiff's favor.

Second, the conduct was not severe. The employee received unsolicited office visits—during which the board member spoke to the employee in an "unacceptable and harassing manner" (and rifled through his papers)—and emails that were "very pointed." Our cases that find severe or pervasive harassment based on race, however, all identify harassment that is *of a racial nature*. *See, e.g.*, *Smelter*, 904 F.3d at 1286 (noting among other things that the plaintiff was called a "dumb black [n****r]" and told that her hair made her resemble a "mixed monkey" (citations omitted)); *Adams*, 754 F.3d at 1251−54 (noting among other things that the plaintiffs saw nooses in the breakroom and racist graffiti in the restroom and were forced to work alongside co-workers and supervisors who wore

8

shirts with the Confederate flag and used racial slurs); *Jones*, 683 F.3d at 1303 (noting among other things that the plaintiff found banana peels on his truck and was forced to work alongside co-workers who wore shirts with the Confederate flag). So even if the employee was targeted by the board member because he was black, the form that the targeting took was not racial.

Third, the conduct at issue was not physically threatening. *Cf. Jones*, 683 F.3d at 1303 (observing that the plaintiff was approached by two co-workers, "at night," one of whom was wielding "an object that could be perceived as a weapon"). And for reasons that mirror our analysis on the second factor, the conduct also was not humiliating. *Cf. Smelter*, 904 F.3d at 1286 (noting among other things that "racial slurs were directed at [the plaintiff] every day").

Last, the record contains no evidence that the owner believed the conduct to interfere with the employee's job performance. Indeed, she was concerned more about the "appearance" of the board member's repeated presence in the employee's office, *see* Appellant's Br. at 3, than its effect, if any, on the employee's ability to discharge his job.

\*    \*    \*

Simply put, the owner could not have held a "reasonable belief that the employer was engaged in unlawful employment practices." *See Butler*, 536 F.3d at 1213 (quoting *Little*, 103 F.3d at 960). As such, Elite, through its owner, did not

9

engage in "statutorily protected activity." *See Jefferson*, 891 F.3d at 924. We agree with Elite that the board member's conduct was unprofessional and unfit for a professional environment. Yet we have repeatedly said that "[§ 1981] is not a civility code," *see Trask*, 822 F.3d at 1195, and the conduct here is not one for which there is a legal remedy.

### III.

For these reasons, we **AFFIRM** the District Court's grant of summary judgment on the § 1981 retaliation claim for the Community.